The plaintiff, Natale J. Sergi, brought this action in the Superior Court claiming that the defendants' negligence caused water damage to his property. The parties litigated the case for twenty-one months and then reported the case settled after mediation. When subsequent efforts to resolve the case broke down, Sergi filed a motion to schedule a pretrial conference and the defendants filed a cross motion to enforce the settlement agreement. After a hearing, a Superior Court judge allowed the motion to enforce the settlement agreement, and judgment entered accordingly. On appeal, Sergi claims error in the judge's ruling, arguing that the settlement agreement was not final and enforceable. We affirm.
A settlement agreement is enforceable if (1) its material terms are sufficiently complete and definite, and (2) the parties exhibited a present intent to be bound at the time of formation. See Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). Where, as here, uncontested electronic mail messages (e-mails) memorialize the agreement, "whether the parties agreed on all material terms is treated as a question of law that we review de novo." Duff v. McKay, 89 Mass. App. Ct. 538, 544. Whether a party intended to be bound by the terms of an agreement, however, is a finding of fact we review for clear error. See Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008).
Sergi argues the settlement agreement is not enforceable because the defendants never expressly accepted the revisions made by Sergi's attorney, leaving a material term of the agreement indefinite and ambiguous. More specifically, Sergi claims they had not resolved whether water damage claims that may accrue in the future were subject to the agreement. Said another way, Sergi claims the settlement agreement was not complete. We disagree.
"Sufficient completeness depends upon the substance of the terms approved by the parties." Targus Group Int'l, Inc., 76 Mass. App. Ct. at 429. An agreement must capture the "essential nature of the bargain," viewed in light of the circumstances when the parties indicated an agreement was reached, professional norms, and the reasonable expectations of the parties. Duff, 89 Mass. App. Ct. at 544-545. An agreement encompassing the essential terms is not "a nullity solely because it is a contract to execute still another document." Sands v. Arruda, 359 Mass. 591, 594 (1971). See Fecteau Benefits Group v. Knox, 72 Mass. App. Ct. 204, 212 (2008) (e-mail exchange containing essential terms constituted enforceable agreement). Indeed, "the need for further documents does not preclude the formation of a binding agreement ... [and] may signify not incompleteness but rather the subsequent memorialization of an already accomplished agreement." Targus Group Int'l, Inc., supra at 429-430.
Here, the parties agreed to settle Sergi's existing claims and execute that agreement in the near future. Immediately following mediation, Sergi's counsel initiated an e-mail exchange confirming that the parties agreed to settle the case for $100,000 in exchange for a forthcoming release of claims. Sergi's counsel also asked whether defense counsel needed Sergi's tax identification number to facilitate the settlement. In an immediate response, defense counsel affirmed the settlement and the need for the tax identification number. See Fecteau Benefits Group, 72 Mass. App. Ct. at 212. These e-mails evidence a clear and complete agreement to settle Sergi's claims. See Duff, 89 Mass. App. Ct. at 544-545.
We are not persuaded by Sergi's argument that the scope of the release remained indefinite because his revisions were not expressly accepted. The first draft of the release covered all "causes of action ... resulting from or related in any way to the acts, omissions, circumstances, facts, allegations, claims, or situations that were or could have been described" in the underlying civil action. Sergi's attorney later removed the words "could have been described." At the motion hearing the judge assumed, and the parties did not disagree, that the release covered then-existing claims. Considering the initial e-mail's reference to "settl[ing] this case," the mediation intended to settle Sergi's existing claims, professional norms, and the parties' expectations, we agree that the scope of the release was sufficiently definite when the parties exchanged e-mails on January 2, 2017.
Nor are we persuaded by Sergi's claim that the parties did not intend to be bound by the settlement agreement until the defendants explicitly accepted his proposed revisions. Intent may be ascertained by looking at the parties' communications, the agreement as a whole, and the underlying facts and circumstances. See Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45-46 (1991). Words and conduct demonstrating a present agreement on all material terms render an agreement enforceable and any subsequent documentation a memorialization of the agreement. Basis Tech. Corp., 71 Mass. App. Ct. at 40. The deliberative process that led to the settlement -- protracted litigation, exchanges of information, and mediation -- also illustrates the parties' intent to settle. Targus Group Int'l, Inc., 76 Mass. App. Ct. at 433. Finally, the report of settlement to the court is also strong evidence of a present intent to settle. See Duff, 89 Mass. App. Ct. at 546.
Here, the uncontroverted e-mails, which followed two years of litigation and a day-long mediation session, see Targus Group Int'l, Inc., 76 Mass. App. Ct. at 433, show the parties considered the case settled in early January of 2017. Basis Tech. Corp., 71 Mass. App. Ct. at 40. The settlement was reported to the court and uncontested until a new leak occurred. See Duff, 89 Mass. App. Ct. at 546. Under these circumstances, we discern no error in the judge's conclusion that both parties intended to be bound by the agreement reached on January 2.[4]
Judgment affirmed.

"Other points, relied on by the [plaintiff], but not discussed in this opinion, have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).